Good morning. May it please the court, Jonathan Libby appearing on behalf of the appellant Dominique Cornejo. Your honors, we've raised several issues in our brief. This morning I intend to focus on the denial of the motion to suppress, but happy to address any other questions the court may have on the other issues. With respect to the motion to suppress, your honor, the motion should have been granted for two With respect to the stop, it was based essentially on an anonymous tip by a passing motorist who simply said So when you say anonymous, the police knew who it was? The police knew that an individual approached them. I mean, this is not somebody calling on the phone and the voice on the phone. That's anonymous. This is somebody who walks up, tells them the information, has a car with license plate number that they can check out. It's somebody who can be asked for ID and a name and the like. So it's not anonymous in the usual sense of the term. It's anonymous in the sense that the officers did not take down any of that information, did not seek out any of that information. Well, maybe not, maybe not, but it's not anonymous. It's not truly anonymous. They could have gotten information. They could have gotten information even without asking him for it by noting the license plate number. Correct, but the officers did not do that. Okay, so I'm not sure it's fair to say it's anonymous. Let me run through the facts here that you're going to be putting forward. The driver comes up to them, rolls down his window, says to the police, there's somebody robbing a mailbox. Tells them where it is. They drive to the mailbox. It's 2 or 2.30 in the morning on May 2nd, time of the month when there tend to be more mail thefts than otherwise. The place is otherwise deserted except for two men walking rapidly away from the mailbox at the point where they show up about 5 feet away. They see mail scattered around the mailbox. If the police had not stopped those two men, I'd fire them. Your Honor, there would be nothing wrong at that point for the officers to have stopped, not in the sense of a Terry stop, but have simply said, hey, guys, can we talk to you? No, I think there's reasonable suspicion for them to stop and say, because they have in their mind, this looks like a crime. I have a reasonable suspicion that you're the perpetrators. Well, but it's based on nothing more than this. Nothing more than what I just recounted. Sure. Which this unknown person simply saying, I saw two black men stealing mail from the mailbox. And they arrive, and there are two men. The testimony at the trial was, in fact, about 10 feet away. They're walking away. They weren't running. Were they walking rapidly? I believe the declaration indicated rapidly. The testimony did not indicate rapidly. They were walking away. They certainly weren't running away. And the officer testified that, no. And nobody else around? That's correct. And it's 2 or 2.30 in the morning. And there's mail scattered around the mailbox. Yeah, okay. Well, that's right, Your Honor. On this question as the reasonable answer to stop, I'm done. All right. Fair enough, Your Honor. Not sure as to my colleagues, but I'm done. Okay. Fair enough. You can be pretty sure as his colleagues. So there goes the panel. It does. So I'll move on to the frisk. And here what we know about the frisk is the officers ordered them to stop and face the wall. He then approached, Officer Sanchez approached, and then immediately frisked Mr. Krenak. Counsel, let me ask you a threshold question on the frisk. Did you raise that as a specific contention in the district court? We believe we did. Looking at pages 82 to 83 of the excerpts in the motion to suppress, we, in fact, made the argument that you just grab it. You made the argument that it was an illegal stop, but you quoted language from Terry about frisking. So first you quote the language from Terry that has the frisk about it, but then your argument is devoted to the illegality, purported illegality of the stop. Right. The law that we, in fact, cited was regarding the frisk. Right. But the argument that you write is not argument that the frisk was wrong, but rather that the stop was wrong. Well, we also argue that the frisk was wrong. Where? It, you know, on appeal we argue that the frisk was wrong. I understand that. Where in the district court? We believe that by including that legal statement in the motion to suppress, that that put everyone on notice that there was a challenge, in fact, to the frisk. Let's assume I can get past that. Let's assume that it was properly argued. And it seems to me that if this is justified as a Terry frisk, it's wrong. That is to say, you're right. Our law, I think, is actually pretty clear on that. The argument that the government makes in response to that is, well, this is a search coincident with a lawful arrest. And we know that we allow searches instant to arrest sometimes to occur just before the arrest. Why is that not a valid justification for the search? Well, that's an argument that was not presented anywhere. The words probable cause. And the reason that argument wasn't presented is because you didn't argue the illegality of the frisk. Well, again, we believe we do. And we believe that the government understood that, because when one reads the government's response, its opposition to the motion to suppress, on page 101 of the excerpts, the government argues, once the Cornejos stopped, and this is starting on line 14, once the Cornejos stopped, Officer Sanchez saw the mail protruding from Cornejos' pocket. Accordingly, Officer Sanchez's pat-down of defendant and recovery of the mail did not violate the law or defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment. Now, if we had not raised the argument with respect to the pat-down, then why did the government feel it needed to, in fact, address the argument with respect to the pat-down? The government responded. Let's assume the government has not waived the argument, the argument that it now makes, that this was a valid search incident to arrest. Let's assume that argument's properly in front of us. Why is that argument wrong? Well, it's the government didn't make exactly clear what the arrest was for. Well, it's pretty obvious. It's for stealing mail. Well, if that's what it's for, then what did we know at this point? That's correct. That's the question. Right. What do we know? We know that they had this unknown person indicating that these individuals, that two unidentified black men were stealing mail. Police come up. They find the Cornejos 10 feet away, not running. They ask them to stop. They stopped. And what other information was there at that point? Well, there's a little more information. Once they stop them, and I'm assuming it's a brimstone, so it will stop, not only do they see mail scattered around, according to the testimony of the officers uncontradicted, your client has mail sticking out of the pocket of his cargo shorts. Well, Your Honor, it's not clear that the officer, in fact, didn't see that before the frisk started. But even if that's the case, it's an envelope sticking out of someone's pocket. That doesn't indicate that somebody, in fact, that there's probable cause to believe that he, in fact, had stolen that piece of mail from the mailbox. It's just an envelope. The officers didn't see any name or address on the envelope. They didn't know who the envelope was, whether it was Mr. Cornejos' name, either as an addressee or addresser. There was no information at that point. So all they had was ---- It's not conclusive, counsel, that there's probable cause. But isn't it a fact that could be considered in assessing probable cause to arrest? Well, all of those facts are certainly factors that the officers should have considered in terms of probable cause. So the fact, they did not run. They were cooperative. There was nothing to indicate any nervousness on their part. There wasn't any fidgeting on their part. There was no information known to the officers other than there may, in fact, have been theft. The Cornejos may have participated in that, but nothing to demonstrate a sufficient probable cause to arrest them until after the search was conducted, and they then retrieved mail that they knew was not belonging to the Cornejos. So until that actual search took place, they certainly didn't have sufficient evidence to arrest them for anything. So what were they supposed to do at that point? Just let them go? I mean, if you're right, what was the next step they should have taken? Well, the process that they simply ---- they could have interviewed them. They could have questioned them. They could have, based on the answers to those questions, developed further evidence to suggest probable cause. But the officers jumped the gun. They simply immediately frisked them, assuming that perhaps they were engaged in criminal conduct. But that's not a basis for the frisk. So if they did have probable cause to arrest them at that point, it couldn't be a lawful search incident to arrest. And so then it's just a tariff risk, and they didn't have enough information at that point to justify tariff risk. There's nothing to suggest that they were armed or dangerous. And I don't believe the government's even pressed that they're armed and dangerous. Certainly all the officers did not suggest that. Roberts. Okay. Thank you. Thank you. May I please the Court? Devin Myers on behalf of the United States. How are you? Good. Good. Thanks. Yourself? Anything you heard this morning that you think is not adequately covered in your brief? Your Honor, of course, we disagree with the defendant's position. We believe the district court did correctly deny the motion to suppress. We agree with the court that there was reasonable suspicion to the staff. Do you think that's not adequately covered in your brief? I believe the brief does cover everything, Your Honor. Okay. Thank you. Is there? Okay. The case is arguably stand submitted. Yes, Your Honor.
judges: Kozinski, W. Fletcher, Gould